GUY W. PARKER
*vs.*
WILLIAM B. KNOX

Androscoggin.    Opinion, April 5, 1952.

*Berman & Berman,* for plaintiff.

*Frank W. Linnell,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J.   Defendant's general motion for a new trial herein raises the single issue whether the verdict returned against him, with its implied findings that he was operating a motor vehicle negligently and that the plaintiff was using due care, when he suffered the damages for which he is seeking recovery, has that sufficient support in evidence essential to sustain it.   The motion carries an allegation that the amount of the award carried in the verdict is excessive, but that allegation was not argued, and may properly be considered as waived, although it may be said that a reading of the record shows it had no merit.

The facts disclose that the plaintiff, a man seventy-five years of age, was operating a motor truck, carrying a heavy load of rock from Leeds to Bath, when he drove it off the road and it overturned, injuring him and damaging his truck.   The defendant, an officer of Maine State Police, traveling along the highway on which plaintiff was proceeding, had observed the truck of the latter ahead of him just prior to the event and, believing that the load the truck was carrying might be excessive, had increased the speed of his car to overtake and pass the truck, for the purpose of stopping it and weighing the load.   The load was not in fact excessive.   The defendant trailed the truck a short distance, increased his speed to overtake and pass it, turned to the left of the highway, in the direction in which both vehicles were moving, for that purpose, and proceeded to pass. He signalled the plaintiff to stop, by flashing his lights, and swung his car back to the right hand side of the highway, applying his brakes lightly, to bring his own car gradually, as he said, to a stop.  The plaintiff, fearing a collision, as he testified, applied the brakes of the truck with considerable force and turned sharply left, to avoid hitting the defendant's car.  He lost control of the truck, for a cause that cannot be known with certainty, although the defendant testified that the plaintiff told him, while in the hospital, that after turning to the left he could not turn back into the road

because of some binding of the front wheels of his truck. In any event, whatever the cause, the plaintiff continued to follow a gradual course from the right side of the road to the left, into and across the ditch on the left hand side, and on to swampy ground, where the overturning occurred, throwing the plaintiff out. The truck righted itself thereafter.

At the point where the accident occurred the traveled portion of the highway was approximately twenty-three feet wide, the surface was dry, and the road was practically straight and level for a considerable distance in both directions. There was no other traffic in sight upon it. The truck left a skid-mark approximately one hundred and fifty feet in length on the highway surface.

The evidence is sharply conflicting. The points of conflict relate to the speed at which the plaintiff's truck was moving, which he places at thirty-five miles per hour, against an estimate of the defendant that was considerably larger, but did not involve unlawful speed; whether or not the defendant sounded a horn, to give notice that he was to pass the truck; and the clearance between the two vehicles at the time of passing and, thereafter, when the defendant swung his vehicle to the right, began to slow its speed, and brought it to a stop. There is a conflict, also, perhaps not material, about the lights defendant flashed to signal the plaintiff to bring his truck to a stop. The plaintiff asserts he saw a "blue" light flashing, over his left front mudguard. The defendant states that his vehicle carried no "blue" light, but that he used his stop lights in his signalling. The most vital point of conflict relates to the distance defendant traveled after passing the truck before swinging from the left side of the road, which he used in passing, to the right, and before slowing the speed of his car thereafter. On these points there is some testimony corroborative of the evidence

given by the defendant, that he kept to the left until he had opened up distances of forty feet or more, before making any swing to the right, and a hundred feet or more, before reducing his speed. Such corroboration came from the only eye-witness to the accident, other than the parties themselves, and there is nothing in the record to justify belief that he had any basis for bias or prejudice.

The principles which must control decision on the motion are well established. Factual decisions of a jury cannot be disturbed by a court on review unless manifestly influenced by bias, passion or prejudice, or reflecting apparent mistake. *Jannell* v. *Myers,* 124 Me. 229, 127 A. 156; *McCully* v. *Bessey,* 142 Me. 209, 49 A. (2nd) 230. In resolving such an issue the testimony given in a case must be viewed in the light most favorable to the party for whom a verdict has been rendered. *Searles* v. *Ross,* 134 Me. 77, 181 A. 820; *Marr* v. *Hicks,* 136 Me. 33, 1 A. (2nd) 171; *McCully* v. *Bessey, supra.* In applying these principles it must be recognized that it is for a jury rather than a court to pass upon the credibility of witnesses. *Esponette* v. *Wiseman,* 130 Me. 297, 155 A. 650; *Shannon* v. *Baker,* 145 Me. 58, 71 A. (2nd) 318, and cases cited therein. All of these principles tend to support the position of the plaintiff, but they do not require the sustaining of a verdict on evidence inherently impossible. *Blumenthal* v. *Boston & Maine Railroad,* 97 Me. 255, 54 A. 747; *McCarthy* v. *Bangor and Aroostook Railroad Co.,* 112 Me. 1, 90 A. 490, 54 L. R. A. N. S. 140; *Alpert* v. *Alpert,* 142 Me. 260, 49 A. (2nd) 911. As the Pennsylvania court states a principle of similar import, "testimony in violation of incontrovertible physical facts and contrary to human experience * * * must be rejected." *Crago* v. *Sickman,* 165 A. 841, and cases cited therein. To the same effect are the declarations of this court in *Esponette* v. *Wiseman, supra,* that a jury has the right to accept the story of a witness:

"as correct in so far as it was (is) not modified or contradicted by admitted facts",

and that a court is bound by jury findings:

"but only to that extent."

It is on this principle that plaintiff's case must fail. To establish defendant's negligence, within the principle that the operation of a vehicle in violation of the "law of the road" constitutes negligence, when it becomes a proximate cause of an accident, he asserts that the defendant swung his car to the right immediately after passing the truck, contrary to the provisions of R. S., 1944, Chap. 19, Sec. 103, as amended. The provision thereof, as it stands since the enactment of P. L., 1947, Chap. 86, requires the driver of a vehicle, overtaking another proceeding along the highway in the same direction, to pass it, to:

"pass at a safe distance to the left thereof, and
* not again drive to the right side of the highway
until safely clear of such overtaken vehicle."

That this constitutes a part of the "law of the road," and that proof of a violation of its mandate makes a *prima facie* case of negligence, is well established. *Dansky* v. *Kotimaki*, 125 Me. 72, 130 A. 871; *Rouse* v. *Scott*, 132 Me. 22, 164 A. 872; *Robinson* v. *LeSage*, 145 Me. 300, 75 A (2nd) 447. The difficulty arises in the fact that the only evidence given to support the plaintiff's factual picture of the event, carried in his own evidence, is inherently impossible, when tested by the uncontroverted fact that there was no time after the defendant's car passed his truck when the distance which separated the two vehicles was not increasing. His own story is that the defendant's car "slowed right down," immediately the passing was accomplished, as he stated on direct-examination, or "stopped," practically as promptly, as he said on cross-examination. Had either been true, if the defendant had swung to the right as abruptly as the plaintiff asserted, even a sharp swing of the truck to the

left would not have given space for clearance and, with no diminution of the speed of the truck, and plaintiff does not claim any, it would have rammed the rear end of defendant's car, or overtaken and passed it.

The skid-mark made by plaintiff's truck shows the angle of its swing to the left, and that it did not deviate from the course taken when it was made, until it left the road and passed into the ditch. The reason for the failure of the plaintiff to follow the road by turning to the right when the left hand limit of the traveled part was reached can be known only by himself. That he did not have the truck under control is apparent. He testified that he recognized that a police officer was driving the car passing him, and that he saw a light flashing thereon. This must have given him notice that a police officer was signalling him to stop.

Police officers performing official duties, as at all other times, are holden to the exercise of reasonable care, under the circumstances confronting them, in operating vehicles upon our highways, but they are entitled to believe that those they overtake and pass will observe the "law of the road" and maintain control at all times over the vehicles they are operating. The duty of the operator of a motor vehicle to keep the same within control at all times has been frequently stated in this court, and others. See *Esponette* v. *Wiseman, supra,* and cases cited therein. This requirement involves a control that will make it possible for the operator of a vehicle to stop it "within a reasonable distance," as the Michigan court declared in one of the cases so cited, *Bowmaster* v. *DePree Co., 233 N. W. 395, and on proper notice, such as the signal of a police officer. Had the plaintiff maintained such control over his truck, the accident here involved would not have happened.

Recognizing that the jury in the exercise of its proper function was entitled to accept the testimony of the plaintiff, that the speedometer of his truck showed he was travel-

ing at a speed of thirty-five miles per hour when the car of the defendant passed him, and reject the evidence of the defendant, that the speed of the truck at the time was nearer fifty miles per hour, it was not justified in believing that the truck was being operated under such adequate control as would permit the stopping of it within a reasonable distance, or on proper notice by one entitled to signal its operator to bring it to a stop. A careful reading of the record makes it apparent that the jury must have been influenced by sympathy for an old man lawfully engaged in hauling rock over the highway, or bias against a police officer for stopping him, unnecessarily, to weigh a load which was not in fact excessive. It was the duty of the officer to stop the truck and weigh the load if he had reason to believe it might be excessive, and there is no evidence that he did not. It was the duty of the plaintiff to stop his truck, and to keep it within control at all times so that he could do so without accident, on proper signal. It is doubtful if the evidence could be held to sustain a finding that the defendant was negligent. It is apparent that it cannot support one that the plaintiff was in the exercise of due care. As was said in *Esponette* v. *Wiseman, supra:*

> "We reach the conclusion regretfully but unavoidably that plaintiff's own negligence contributed to the happening of the event which caused his injury."

*Motion sustained.*