2003 ME 118

**Michelle NORTON et al.**

**v.**

**Deborah HALL et al.**

Supreme Judicial Court of Maine.

Argued: Dec. 10, 2002.

Decided: Sept. 30, 2003.

---

Martha C. Gaythwaite, Esq. (orally), Friedman Gaythwaite Wolf & Leavitt, Portland, for plaintiffs.

Peter T. Marchesi, Esq. (orally), Wheeler & Arey, P.A., Waterville, for Deborah Hall.

John J. Wall III, Esq. (orally), Monaghan & Leahy, LLP, Portland, for Cumberland County.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA,* ALEXANDER, CALKINS, and LEVY, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, RUDMAN, and LEVY, JJ.

Concurrence: SAUFLEY, C.J.

Dissent: DANA, ALEXANDER, and CALKINS, JJ.

---

* Although not available at oral argument, Justice Dana participated in this opinion. *See* M.R.App. R. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

CLIFFORD, J.

[¶ 1] Michelle Norton and John Norton appeal from the summary judgment entered in the Superior Court (Cumberland County, *Humphrey, J.*) in favor of defendants Deborah Hall, the Cumberland County Sheriff's Department, and Cumberland County. The court concluded that the Nortons' suit is barred by the discretionary function immunity provisions of the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101–8118 (2003) and that their constitutional claims are precluded because of qualified immunity. The Nortons contend that their claims arise out of the negligent operation of a motor vehicle, and are not subject to the immunity provisions of the Maine Tort Claims Act or doctrines of qualified immunity. We affirm the judgment.

I.

[¶ 2] At approximately 9:43 on the evening of July 8, 1998, Hall, a full-time deputy with the Cumberland County Sheriff's Department, was operating a Sheriff's Department cruiser in the Casco/Raymond area. She received a radio dispatch to respond to a residence in Casco where a six-year-old child was reported to be out-of-control. Hall had made previous responses to this residence that involved physical abuse and alcohol. Although there were no reports of any injuries at that point, only a behavioral problem, Hall was also told that a rescue unit was standing by. Hall initiated an emergency response to this call, based on her belief that there was a serious emergency involving a young child that required her immediate response before the rescue unit would respond.

[¶ 3] In her emergency response, Hall contends that she used the vehicle's blue lights and siren. Other witnesses disputed Hall's assertion that her siren was activated. Driving on busy Route 302 in Raymond, Hall was observed passing vehicles at high rates of speed until she collided with the Nortons' vehicle, as it was making a left turn. The Nortons' two sons, ages 15 and 18, died as a result of the collision. Hall was injured.

[¶ 4] The Nortons brought negligence, wrongful death, and civil rights claims against Cumberland County, the Cumberland County Sheriff's Department, the State, the Maine Criminal Justice Academy, the Maine State Police, and Hall.[1]

[¶ 5] The court later granted the summary judgment motions filed by Hall, the Cumberland County Sheriff's Department and Cumberland County, and entered summary judgment in their favor. The court concluded that Hall's choice to engage in an emergency response was a discretionary function, rendering Hall and the County defendants immune from suit pursuant to the Maine Tort Claims Act, 14 M.R.S.A. §§ 8104–B(3) and 8111(1)(C), and that they were entitled to qualified immunity protecting them from the cause of action asserted pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (1994). This appeal by the Nortons followed.

II.

[¶ 6] The Maine Tort Claims Act provides that a governmental entity is not liable for any claims which result from: "[p]erforming or failing to perform a discretionary function or duty, whether or not the discretion is abused . . . ." 14 M.R.S.A. § 8104–B(3) (2003). Section 8111(1)(C)

---

1. A motion to dismiss the State of Maine defendants was granted, and those dismissals are not challenged in this appeal.

provides similar discretionary function immunity for government employees.[2]

[¶ 7] The Nortons contend that Hall's decision to treat and respond to the call involving the out-of-control boy as an emergency is not a discretionary act within the meaning of sections 8104–B(3) and 8111(1)(C). We have used the following four-factor test to determine whether discretionary function immunity applies:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Roberts v. State*, 1999 ME 89, ¶ 8, 731 A.2d 855, 857 (citations omitted). The response to an emergency by a law enforcement officer serves the basic governmental objective of public safety. *See Selby v. Cumberland County*, 2002 ME 80, ¶ 7, 796 A.2d 678, 680. In *Selby*, we held that a deputy sheriff's decision to engage in a high-speed chase is a discretionary decision to which discretionary immunity applies. *Id.* ¶ 10, 796 A.2d at 681–82.

[¶ 8] The Nortons also contend that even if the initial decision by Hall to respond to the call as an emergency is an act protected by discretionary immunity, the actions taken in that response, particularly the operation of the vehicle, are not protected. The Nortons rely on section 8104–A(1)(A), which provides that "[a] governmental entity is liable for property damage, bodily injury or death" arising from "its negligent acts or omissions in its ownership, maintenance or use of any ... [m]otor vehicle." 14 M.R.S.A. § 8104–A(1)(A) (2003). Because the deaths in this case resulted from Hall's operation of a police cruiser, the Nortons contend they are entitled to recover. We disagree.

[¶ 9] First, the decision by Hall to respond to the emergency (the *whether* to respond) cannot be isolated from the response itself (the *how* to respond). The exercise of discretion involves more than a decision in the abstract to respond. Actions taken by a law enforcement officer in response to an emergency implicate the discretionary judgment of the officer and the immunity protecting governmental entities and their employees extends to those actions. The operation of the cruiser on the way to the emergency is an integral part of, and cannot be separated from, the initial decision to respond.

[¶ 10] In *Roberts*, a prison inmate was injured when a cell door was slammed on his finger by a prison guard as the inmate was entering the cell. 1999 ME 89, ¶ 2, 731 A.2d at 856. In the suit brought by the inmate, a summary judgment was en-

---

**2.** Section 8111(1) provides, in pertinent part:

1. Immunity. Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:

. . . .

C. Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid;

14 M.R.S.A. § 8111(1)(C) (2003).

tered in favor of the prison guard and the State, based in part on discretionary function immunity. 14 M.R.S.A. §§ 8104–B(3) & 8111(1)(C); *Roberts,* 1999 ME 89, ¶ 5, 731 A.2d at 856–57. We rejected the inmate's argument that the guard's specific act of shutting the cell door on the inmate's hand had to be considered as separate and distinct from the discretionary decision of the prison guard to place the inmate in his cell. *Id.* ¶ 10, 731 A.2d at 857–58. We concluded that, for purposes of discretionary function immunity, the decision to place the inmate in the cell included the shutting of the cell door when the inmate himself failed to shut the door or the door failed to shut by itself. *Id.*

[¶ 11] Moreover, although section 8104–A(1)(A) provides that "[a] governmental entity is liable for its negligent acts or omissions in its ownership, maintenance or use of any: A. Motor vehicle," section 8104–B(3) provides a governmental entity with discretionary function immunity *despite* section 8104–A. 14 M.R.S.A. § 8104–B(3). If the actions taken by Hall in carrying out an emergency response were separated and placed in a different category from her decision *to* respond, discretionary function immunity would effectively be removed as a defense in any case involving the operation of a motor vehicle. The express language in section 8104–B(3) and 8111(1) of the Maine Tort Claims Act precludes such a result.

[¶ 12] Section 8104–B provides:

*Notwithstanding* section 8104–A, a governmental entity is *not* liable for any claim which results from:

. . . .

3. Performing Discretionary Function. Performing or failing to perform a discretionary function or duty, whether or not the discretion is abused and whether or not any statute, charter, ordinance, order, resolution or policy under which the discretionary function or duty is performed is valid or invalid[.]

14 M.R.S.A. § 8104–B(3) (emphasis added). In keeping with the statutory language, in *Carroll v. City of Portland,* we expressly noted that "*[n]otwithstanding* the immunity waiver provisions of section 8104–A, section 8104–B *expressly retains* certain types of *immunity* for governmental entities, *including discretionary function immunity.*" 1999 ME 131, ¶ 6 n. 3, 736 A.2d 279, 282 (emphasis added).

[¶ 13] Moreover, 14 M.R.S.A. § 8111(1)(C) provides *absolute immunity* to Hall for performing or failing to perform any discretionary function or duty, regardless of whether or not she abuses that discretion. The immunity applies "whenever a discretionary act is reasonably encompassed by the duties of the governmental employee . . . [and is] available to all government employees, including police officers . . . ." *Id.* § 8111(1). It is difficult to imagine clearer statutory language to immunize law enforcement personnel for the actions they take in the responses to a legitimate emergency.

[¶ 14] The fact that the conduct of Hall in responding to an emergency is protected by the immunity provisions of the Tort Claims Act does not render 14 M.R.S.A. § 8104–A(1)(A) meaningless. Not all operations of public safety vehicles involve discretionary acts protected by the provisions of section 8104–B(3) and section 8111(1)(C). For example, provisions of section 8104–A(1)(A) still apply to the everyday non-discretionary operation of governmental motor vehicles, such as routine patrolling. The limited exception to immunity for the operation of motor vehicles set out in section 8104–A(1)(A), however, does not remove otherwise applicable discretionary function immunity arising from the officer's discretionary response to a

true emergency. *See* 14 M.R.S.A. § 8104–B(3).

[¶ 15] The Statement of Fact to L.D. 2443, which was enacted as 14 M.R.S.A. § 8111, states as follows:

[I]t bears emphasis that the immunities contained in Title 14, section 8111 are intended to serve important governmental purposes. Government officials are frequently required as part of their jobs to take actions that have serious consequences for the individuals affected. Obvious examples are the actions of law enforcement officers investigating crimes .... If these government officials were faced with the constant possibility of personal liability, the inevitable result would be that they would be hesitant to take necessary enforcement action and the public interest would suffer.

L.D. 2443, Statement of Fact at 15 (113th Legis.1987). The Legislature clearly intended to grant immunity to law enforcement officers responding to a legitimate emergency. Any other result would be contrary to the letter and the spirit of the Maine Tort Claims Act.

[¶ 16] The Nortons also contend that if Hall is protected by immunity for the actions she took with the cruiser, then the emergency vehicle statute, 29–A M.R.S.A. § 2054 (1996 & Supp.2002), would be rendered meaningless. We disagree. That statute provides that drivers of emergency vehicles have the benefit of certain privileges, such as exceeding the posted speed limit or driving through a red light. *Id.* § 2054(5). These privileges are dependent on the operator using the vehicles emergency lights at all times when responding to an emergency, and also using the siren when it is "reasonably necessary to warn" other drivers. *Id.*

§ 2054(6). The parties do not dispute that Hall was using the vehicle's emergency lights, although there is dispute about whether the vehicle's siren was operating at the time of the accident. Section 2054, however, does not effect immunity. First, the emergency vehicle statute sets out rules of the road for the operation of emergency vehicles, but it does *not* address liability of governmental entities or their employees for damages arising out of the use of such vehicles. *See id.* § 2054. Moreover, as the trial court correctly noted, even if Hall acted contrary to the statutory rules of the road for the operation of emergency vehicles, the statutes do not strip her of the discretionary immunity provided under the Maine Tort Claims Act. In *Selby,* we concluded that "[i]mmunity exists even when the official lacked the authority to do the act, or abused the discretion." 2002 ME 80, ¶ 6, 796 A.2d at 680. Accordingly, the court correctly concluded that even if Hall was not using her vehicle's siren, she was nevertheless entitled to discretionary immunity in the operation of the cruiser.

III.

[¶ 17] The Nortons also contend that they have produced facts sufficient to support their § 1983 civil rights claims because the circumstances of an out-of-control child was not an emergency within the meaning of the statute, and further that Hall acted with "deliberate indifference" when responding to the call.[3] The Nortons further argue that the defendants are not entitled to qualified immunity because Hall's actions were not objectively reasonable, and violated clearly established constitutional rights.

---

**3.** The Nortons also raised constitutional claims under the Maine Civil Rights Act. The analysis of such claims is similar to federal civil rights claims and we do not address them separately. *See Fowles v. Stearns,* 886 F.Supp. 894, 899 n. 6 (D.Me.1995).

[¶ 18] The Nortons' contentions that they have been deprived of their constitutional rights provided by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Article I sections one, five, and six of the Maine Constitution are without merit. Their claim of deprivation of their substantive due process rights protected by the Fourteenth Amendment is also without merit. We agree with the Superior Court that this argument fails because the Nortons did not demonstrate that Hall's conduct "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

[¶ 19] In *County of Sacramento*, the United States Supreme Court held that a police officer did not violate the Fourteenth Amendment's guarantee of substantive due process by causing the death of a motorcycle passenger through deliberate or reckless indifference when pursuing the motorcycle driver in a high-speed chase. *Id.* at 853–54, 118 S.Ct. 1708. The Court determined that in those circumstances, only an intent to harm, unrelated to the legitimate purpose of pursuing an arrest, would satisfy the necessary element of arbitrary conduct shocking to the conscience. *Id.* Pursuant to this standard, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 846 (quotation omitted). The Court explained the behavior meeting the lower standard of deliberate indifference might be conscience shocking in some circumstances, like a custodial prison situation, but that a different and higher standard applies when events call for "fast action," and require the balancing of competing concerns under pressure, without the luxury of a second chance. *Id.* at 852–53, 118 S.Ct. 1708. The Court found that a high-speed chase met this criteria. *Id.* at 853, 118 S.Ct. 1708.

[¶ 20] Hall's decision to respond to a call as an emergency is analogous to a decision to engage in a high-speed chase. To respond effectively to an emergency, an officer must make an immediate decision. Hall weighed her concern for the welfare of a child, and those in the child's presence, against the risk of speeding and exposing other citizens to danger. Under these circumstances, the Superior Court correctly concluded that the highest standard of "intent to harm" applies and, since there is no evidence that Hall intended to harm the Nortons, no constitutional violation. *See id.* at 854, 118 S.Ct. 1708. Even if the Nortons had produced facts sufficient to support a constitutional claim, Hall would be entitled to qualified immunity because, given the information she possessed, her conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The entry is:

Judgment affirmed.

SAUFLEY, C.J., concurring.

[¶ 21] I join the majority opinion of the Court in full and write additionally in concurrence to identify what I believe to be the fulcrum of the analytical dispute that has caused the Court to issue separate opinions on this very important matter.

[¶ 22] It is unquestioned that the Tort Claims Act provides immunity from liability to government actors who are involved in discretionary functions.[4] Both the

---

4. Contrary to the analysis of the dissent, the Court's majority opinion today has not "changed the law." It merely enforces the change in the law brought about by the Tort Claims Act.

Court and the dissent agree that the decision to respond to an emergency is a discretionary function and, therefore, falls within the immunities provided by the Tort Claims Act.

[¶ 23] The analysis diverges, however, with regard to the possibility of separating the "whether" of the emergency response from the "how" of the emergency response. The Court in its opinion has found no reasonable basis upon which to conclude that the Legislature intended that courts or juries engage in the subtle teasing apart of those two concepts. Thus, the Court has concluded that it is the Legislature's current intent to cloak the emergency response, both the decision to respond, and the method of response, with sovereign immunity.

[¶ 24] It is within the Legislature's province to decide whether in the future those two concepts *should* be separated and whether one or both should not be shielded from liability for negligence. Because I agree with the Court that the Legislature has not yet articulated that distinction, and because it is the Legislature's role to weigh the competing policy interests, not the role of the Court, I join the Court's opinion today.

ALEXANDER, J., with whom DANA, J. and CALKINS, J., join dissenting.

[¶ 25] I respectfully dissent. Prior to enactment of the Maine Tort Claims Act, governmental entities, though protected by sovereign immunity,[5] accepted responsibility for injuries to others caused by negligent operation of their motor vehicles. *See Russell v. Nadeau,* 139 Me. 286, 29 A.2d 916 (1943) (affirming a finding of liability in a case where a plaintiff's inju-

ries were caused by a fire truck, responding to an emergency call, which entered an intersection against a red light); *Parker v. Knox,* 147 Me. 396, 87 A.2d 663 (1952) (allowing a plaintiff's claim that a police officer's negligent driving had caused his injuries); *Blier v. Inhabitants of Town of Fort Kent,* 273 A.2d 732, 737 (Me.1971) (recognizing a statute waiving governmental immunity, to the extent of insurance coverage, for losses caused by negligent operation of a motor vehicle).

[¶ 26] The Maine Tort Claims Act continued this acceptance of responsibility for injuries caused by negligent operation of government motor vehicles in 14 M.R.S.A. § 8104(1)(A) (2003), quoted in the Court's opinion. Today the Court's opinion terminates that long-standing acceptance of responsibility for injuries caused by negligent driving of government employees on discretionary government business. The Court accomplishes this change in the law by holding that the discretionary function immunity provisions of the Act,[6] mean that the discretionary decision "to respond to the emergency (the *whether* to respond) cannot be isolated from the response itself (the *how* to respond)." *See supra* ¶ 9 (emphasis in original). This view is directly contrary to our holding in *Russell,* where we stated that government drivers, doing their duty responding to an emergency, and consequently exempt from traffic regulations, were not relieved "from the duty of exercising due care to prevent injury to themselves and others lawfully upon the ways." 139 Me. at 288, 29 A.2d at 917.

[¶ 27] The Court's opinion is also contrary to interpretations of the discretionary function immunity provisions of the

---

5. The Maine Tort Claims Act was enacted by P.L.1977, ch. 2, after we "abrogated" the sovereign immunity defense in *Davies v. City of Bath,* 364 A.2d 1269 (Me.1976).

6. 14 M.R.S.A. §§ 8104(B)(3) and 8111(1)(C).

Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680 (2000), although the wording of the Maine discretionary immunity provisions is very similar to their federal counterparts. Thus, 28 U.S.C. § 2680(a) states, in pertinent part, that the United States is not liable for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." In Maine, 14 M.R.S.A. § 8104(B)(3) exempts a government entity from liability for "[p]erforming or failing to perform a discretionary function or duty, whether or not the discretion is abused ...." Separately, government employees are exempt from liability for "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused ...." 14 M.R.S.A. § 8111(1)(C). The liability exemption for employees extends to any discretionary act "reasonably encompassed by the duties of the governmental employee in question." Id. § 8111(1).

[¶ 28] Under the FTCA, vehicle accidents have generally been treated as not involving discretionary function immunity. See Donald N. Zillman, Protecting Discretion: Judicial Interpretation of the Discretionary Function Exception to the Federal Tort Claims Act, 47 ME. L. REV. 365, 373 (1995). This acceptance of liability has extended to negligent operation of emergency vehicles. See Dag E. Ytreberg, Annotation, Federal Tort Claims Act: Automobile Negligence Cases, 4 A.L.R. FED. 6 § 7[e] (1970), summarizing cases. Sometimes the federal emergency vehicle cases result in a finding of liability,

sometimes they do not, but those findings occur after trial, not as a result of a summary judgment because of discretionary function immunity. See Stuuk v. United States, 129 F.Supp. 530 (D.N.H.1954); Anderson v. United States, 117 F.Supp. 438 (D.Fla.1954) (finding liability in emergency vehicle collision); Seaberg v. United States, 448 F.2d 391 (9th Cir.1971); Patterson v. United States, 204 F.Supp. 845 (E.D.N.Y.1961), aff'd, 303 F.2d 280 (2nd Cir.1962); State of Washington v. United States, 194 F.2d 38 (9th Cir.1952) (finding no liability in emergency vehicle collision).

[¶ 29] We recently examined the applicability of the discretionary function immunity provisions to emergency high-speed operations of county police vehicles in Selby v. Cumberland County, 2002 ME 80, 796 A.2d 678. We held that a deputy's choice to engage in a high-speed chase was entitled to discretionary function immunity even if the discretion was abused. See id. ¶ 14. In Selby, the motor vehicle exception to immunity did not apply because the injury caused by the pursued vehicle arose not from the negligent operation of the county vehicle but the discretionary choice of a law enforcement officer to engage in a high-speed chase.[7]

[¶ 30] We also examined the relationship of the motor vehicle operation liability and the discretionary function immunity provisions in Brooks v. Augusta Mental Health Institute, 606 A.2d 789 (Me.1992). In Brooks, a voluntary patient at the Augusta Mental Health Institute (AMHI) died as a result of injuries received from jumping out the exit door of a moving bus while traveling with a group of patients under the supervision of three AMHI employees. Id. at 790. We determined that the basis

7. Selby was a passenger in the vehicle pursued in a high-speed chase. He was injured when the vehicle in which he was riding collided with another vehicle. The county patrol cruiser was not directly involved in the collision which caused Selby's injuries. Selby, 2002 ME 80, ¶ 2, 796 A.2d 678, 679.

of the complaint in *Brooks* was that the AMHI employees were negligent in their supervision of the decedent. We noted that the claimed negligence involved the exercise of the individual employee's professional judgment with regard to supervision of patients "not the defendants' negligent operation, use or maintenance of the bus." *Id.* at 790. This professional judgment was entitled to discretionary function immunity because the use or operation of the motor vehicle in which the patients were traveling was not implicated in any alleged errors of supervision. *Id.* at 791.

[¶ 31] Neither *Selby* nor *Brooks* involved a collision with a negligently operated government vehicle. Therefore, liability under the motor vehicle operation exception to the Maine Tort Claims Act was not generated.

[¶ 32] We are reviewing a grant of a summary judgment. Accordingly, we must construe the evidence most favorably to the party against whom summary judgment was granted. *Wentworth v. Sebra,* 2003 ME 97, ¶ 9, 829 A.2d 520. Thus, for purposes of this analysis, we must presume that Hall's choice to engage in an emergency high-speed response was an abuse of her discretion and that, at the time her vehicle collided with the Norton's vehicle, Hall was operating her vehicle, in the course of her emergency response, in a negligent manner.

[¶ 33] In the quarter century that the Maine Tort Claims Act has been in effect, we have never held that negligent operation of a motor vehicle directly involved in a collision is subject to discretionary function immunity. The motor vehicle liability and discretionary immunity provisions of the Maine Tort Claims Act—just like the

FTCA—can be read as part of a consistent body of law, reflecting the validity of both provisions. Even before the Maine Tort Claims Act, we distinguished the discretionary choice to initiate and maintain an emergency response from any negligent operation of a vehicle in the course of the emergency response. *See Parker,* 147 Me. at 401, 87 A.2d at 666.

[¶ 34] In *Russell,* 139 Me. at 288, 29 A.2d at 917, the case most analogous to this case, we held that while government vehicles responding to emergencies have the right of way and may be exempt from traffic regulations, these privileges:

> do not relieve their operators from the duty of exercising due care to prevent injury to themselves and others lawfully upon the ways.... [t]hey must include in the care they are bound to exercise reasonable precautions against the extraordinary dangers of the situation which duty compels them to create.... Even if the driver of the other vehicle through negligence disregards their right of way they must still use due care to avoid a collision. The measure of their responsibility is due care under all the circumstances.

*Id.*

[¶ 35] While an individual's actions in an emergency situation may be judged differently, a person engaged in or confronted with an emergency situation may be judged to have acted negligently in that situation. *Hargrove v. McGinley,* 2001 ME 36, ¶¶ 6-7, 766 A.2d 587, 589-90; *Ames v. Dipietro–Kay Corp.,* 617 A.2d 559, 561-62 (Me.1992); *Hoch v. Doughty,* 224 A.2d 54, 56-57 (Me.1966); *Russell,* 139 Me. 286, 29 A.2d 916.[8]

---

8. *Roberts v. State,* 1999 ME 89, 731 A.2d 855, on which the Court's opinion so heavily rests, involved a claim of negligence in operation or maintenance of a building, not negligence in

driving a motor vehicle. Notably, one of the negligence claims in *Roberts* had gone to trial, with a judgment for the State. *Id.* ¶ 5, 731 A.2d at 857. That trial was not the focus of

[¶ 36] The facts in this case indicate—as *Russell v. Nadeau* indicates—that there is a distinction between a proper emergency response and a negligent emergency response. Both at the Maine Criminal Justice Academy and later in an incident on the road, deficits, or negligence, had been noted in Hall's high-speed emergency response driving capabilities. Because of those deficits, Hall's emergency response authority had been limited.

[¶ 37] A claim of liability arising out of an accident with a government vehicle engaged in an emergency response involves two separate questions:

First, was the choice to engage in an emergency response and the consequent high-speed driving proper? and

Second, was the vehicle operated in a negligent manner in the course of the emergency response, considering all the circumstances, including the exemption from traffic regulations permitted to an emergency response vehicle and the due care which the operator of the emergency response vehicle must observe, even while engaged in the emergency response?

[¶ 38] The discretionary function immunity provisions of sections 8104(B)(3) and 8111(1)(C) exempt the choice to engage in an emergency response from liability on judicial review, even if that choice is mistaken. But section 8104(A)(1), establishing liability for negligent operation of a motor vehicle, allows a cause of action for negligent operation in the course of an emergency response. Accordingly, the Superior Court's judgment should be vacated and the matter remanded for trial on the questions of whether Hall negligently operated her motor vehicle in the course of her emergency response and whether any negligence or failure to exercise due care proximately caused any injury to the Nortons.

the Court's statements in *Roberts* regarding the law, but it does make *Roberts* an uncertain precedent for the proposition that in claims involving discretionary functions, the Court need not separately examine whether negligence occurred in the course of performing the discretionary function.