STATE OF MAINE                                  SUPERIOR COURT
ANDROSCOGGIN, SS.                               Civil Action
                                                Docket No.   CV-08-084
                                                TED - AND CV-08-114
                                                        7/22/2009

JOHN FORTIER AND THERESA FORTIER    RECEIVED & FILED
Personal Representatives of the Estate of
SHANNON FORTIER,                              JUL 22 2009

                    Plaintiffs               ANDROSCOGGIN
         v.                                  SUPERIOR COURT

CITY OF LEWISTON,

CITY OF LEWISTON SCHOOL DEPARTMENT,

and TWIN CITIES AIR SERVICE, LLC,

                    Defendants

_____

CHRISTINE BABCOCK, Personal Representative of
the Estate of NICHOLAS MATTHEW PHILLIP BABCOCK

                    and

DENISE POULIN, Personal Representatives of the
Estate of TEISHA LOESBURG

                    Plaintiffs
         v.

CITY OF LEWISTON,

CITY OF LEWISTON SCHOOL DEPARTMENT,

and TWIN CITIES AIR SERVICE, LLC, [1]

                    Defendants

## DECISION AND ORDER ON CITY OF LEWISTON / CITY OF LEWISTON SCHOOL DEPARTMENT MOTION FOR SUMMARY JUDGMENT

_____

[1] Plaintiffs Babcock and Poulin have previously executed releases in favor of Twin Cities Air Service, LLC.

# I. BEFORE THE COURT

This matter comes before the court on defendants Lewiston School Department's and City of Lewiston's (collectively referred to as the City) motion for summary judgment.

# II. PROCEDURAL HISTORY AND BACKGROUND

This action stems from an airplane crash in the mountains of western Maine on June 22, 2006 that resulted in the death of three high school students, Shannon J. Fortier, Nicholas Mathew Philip Babcock, and Teisha Loesburg. The three students were passengers in a 172 Cessna airplane owned by Twin Cities Air Service, LLC (Twin Cities) and were taking part in an orientation flight when it crashed into the western side of Barker Mountain, killing all aboard. The plane was piloted by William "Charlie" Weir (Weir) an employee of Twin Cities.

The following facts are undisputed. At the time of the accident, the three students were enrolled at Lewiston High School and were cadets in the Lewiston High School chapter of the Air Force Junior Reserve Officers' Training Corps (AFJROTC). They participated in the AFJROTC summer program operated by, and in conjunction with, the School Department and the AFJROTC. The summer program included the AFJROTC Cadet Orientation Flight Program, which is designed to introduce cadets to general aviation through familiarization flights in single-engine aircraft.

Lewiston High School contracts with the Air Force for the right to maintain the school's AFJROTC unit. The program is conducted pursuant to rules and regulations promulgated by the United States Air Force, specifically the AFJROTC Operations Manual. Lewiston High School had the overall responsibility for the AFJROTC program. The school has been a host for an AFJROTC unit since 1989.

- - 2

Colonel Robert Meyer, an employee of Lewiston High School, was in command of the AFJROTC unit at the time of the accident. The City employed Colonel Meyer as a Senior Aerospace Science Instructor (SASI) at the school. Colonel Meyer's second in command at the time was Thomas Noury, who was employed as an Aerospace Science Instructor (ASI). The U.S. Air Force funds the program, with the exception of the salaries of the SASI and ASI that are paid jointly by the school and the Air Force. The AFJROTC program provided funding to the school's AFJROTC unit to procure orientation flights for cadets on the aircraft as part of the cadet flight program. In 2006, the invoices for the orientation flights were paid by the AFJROTC program and not by the school.

Colonel Meyer was at the Bethel Airport with the cadets when the Twin Cities planes arrived there on June 22, 2006. Weir was piloting the plane when the collision occurred. He was one of two pilots sent by Twin Cities to provide flights on June 22. He had flown the students without incident on trips to Owl's Head in 2005. Prior to the subject flight, Colonel Meyer discussed with Weir that the orientation flight should be approximately twenty minutes in length. There was no discussion concerning the parameters of the orientation flight or the particular maneuvers that would be demonstrated. Colonel Meyer purportedly believed that orientation flights were short flights in which the cadets would be exposed to take-off, basic maneuvering of the aircraft in flight, and then landing. During the second flight that Weir piloted on June 22, 2006, the plane crashed into Barker Mountain, killing all aboard.

John and Theresa Fortier as personal representatives of the Estate of Shannon J. Fortier (the Fortiers) have filed a wrongful death claim against Twin Cities and the

Lewiston School Department (School Department). Docket No. CV-08-084.[2] Christine Babcock, as personal representative of the Estate of Nicholas Mathew Philip Babcock (Babcock), and Denise Poulin, as personal representative of the Estate of Teisha Loesburg (Poulin), have filed wrongful death claims against the School Department and the City of Lewiston, Docket No. CV-08-114.[3] The School Department and the City filed a third party complaint against Twin Cities in that matter. The court previously ordered all the cases consolidated Docket No. CV-08-84, *Fortier v. Twin Cities Air Service, LLC, and the Lewiston School Department.*[4]

In their complaints, the plaintiffs allege that Weir flew in an "unsafe and reckless" manner by flying barefoot, flying too low, performing a stall-and-dive maneuver and executing a "zero G" maneuver. They further claim that Colonel Meyer was negligent in overseeing the flight orientations. The City filed the present motion for summary judgment based on sovereign immunity. It is their contention that they are immune from liability under the Maine Tort Claims Act (MTCA).

---

[2] The Fortiers filed a five-count complaint naming Twin Cities and the Lewiston School Department as defendants. Count I for negligent wrongful death, Count II for punitive damages, and Count III for conscious suffering prior to death are directed at Twin Cities. Count IV for negligence and wrongful death and Count V for conscious pain and suffering prior to death are directed at the School Department.

[3] Poulin and Babcock filed a four-count complaint against the School Department and the City. Count I for negligence and wrongful death and Count II for conscious pain and suffering prior to death are directed at the School Department. Count III for negligence wrongful death and Count IV for conscious pain and suffering prior to death are directed at the City.

[4] Poulin and Babcock have provided releases to Twin Cities in exchange for due consideration. On January 29, 2009, Twin Cities filed a motion to dismiss, or in the alternative a motion for partial summary judgment, on the third party complaint filed against them by the City and the Department based on the releases. On March 4, 2009, the court granted Twin Cities' motion finding that Twin Cities is released from liability with respect to the Babcock/Poulin portion of the suit.

# III. DISCUSSION

## A. Standard of Review

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

## B. Municipal Liability

The City contends that the School Department is not an appropriate entity for a municipal liability claim. Section 8102 of the Maine Tort Claims Act (MTCA) defines governmental entity and political subdivision as a matter of state law. 14 M.R.S. § 8102.[5]

---

[5] The statutory definitions follow:

> 2. GOVERNMENTAL ENTITY. "Governmental entity" means and includes the State and political subdivisions as defined in subsection 3...
>
> ....
>
> ... 3. POLITICAL SUBDIVISION. "Political subdivision" means any city, town, plantation, county, administrative entity or instrumentality created pursuant to Title 30-A, chapters 115 and 119, incorporated fire-fighting unit that is organized under Title 13-B and is officially recognized

Both the School Department and the City of Lewiston qualify as governmental entities under the MTCA.

The City directs the court's attention to several Law Court cases in which the Court changed the name of the defendant in a tort claim against a public school department to name the city rather than the school as the proper defendant. *See Faucher v. City of Auburn*, 465 A.2d 1120 (Me. 1983) (finding the appropriate defendant in a tort action against the City of Auburn School Department was the City of Auburn); *see also Lynch v. Town of Kittery*, 677 A.2d 524 (Me. 1996) (changing the name of the defendant in a negligence action against a school from Traip Academy to the Town of Kittery).

It is not necessary to maintain both the School Department and the City as defendants. In the event that the plaintiffs prevail, there is no impediment to the plaintiffs if the City is the only defendant.

## C. Governmental Immunity

The MTCA governs tort claims against a governmental entity or its employees. 14 M.R.S.A. §§ 8101-8118 (2008); *Smith v. Voisine*, 650 A.2d 1350, 1352 (Me. 1994). The MTCA provides that governmental entities are immune from suit on tort claims, 14 M.R.S.A. § 8103(1), subject to specific, limited exceptions, § 8104-A. *See also Petillo v. City of Portland*, 657 A.2d 325, 326 (Me. 1995). The court strictly construes the exceptions to governmental immunity in the MTCA. *Id.* at 327.

### 1. Exceptions to Immunity

The MTCA delineates several exceptions to the government's entitlement to

---

by any authority created by statute, quasi-municipal corporation and special purpose district, including, but not limited to, any water district, sanitary district, hospital district, school district of any type, an airport authority established pursuant to Title 6, chapter 10, any volunteer fire association as defined in Title 30-A, section 3151, a transit district as defined in Title 30-A, section 3501, subsection 1, a regional transportation corporation as defined in Title 30-A, section 3501, subsection 2 and any emergency medical service.

immunity; the relevant exception here is that a governmental entity is liable for its "negligent acts or omissions in its ownership, maintenance or use of any aircraft." 14 M.R.S. § 8104-A(1)(D). There is no dispute that the City constitutes a governmental entity. The City does, however, dispute that the crash occurred during their ownership, maintenance or use of the airplane within the meaning of section 8104-A(1)(D). They argue that the City's limited acts do not constitute negligent "use" of the subject aircraft. The City contends that its decision to allow the Lewiston High School AFJROTC to accept the Air Force's offer of cadet orientation flights, that were paid by the U.S. Air Force, does not constitute the municipality's use of the aircraft. The City claims it did not "use" the aircraft at issue because the aircraft was not "controlled, piloted and/or operated" by a City employee, as opposed to a person or entity retained by the City to perform a school-related function.

The plaintiffs concede that the City neither owned nor maintained the airplane that crashed; instead, they argue that the key term in section 8104-A(1)(D) for the court's analysis is "use." They assert that at the time of the crash, the aircraft was being used to further the City's purposes, in that it was being used to provide cadet orientation flights to students as part of the school's AFJROTC program curriculum. The plaintiffs contend there is absolutely no authority for the City's contention that § 8104-A(1) liability applies only when the aircraft at issue is piloted or operated by a person who is on the City's payroll.

In support of the City's argument that it was not using the airplane, it directs the court to the case of *Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, 796 A.2d 674, 674. In *Thompson*, the Law Court held the State was immune from liability because the exception set forth in § 8104-A(1) did not apply. 2002 ME 78, ¶ 9, 796 A.2d 674, 677. The plaintiff had been injured in a snowmobiling accident and claimed his injuries were

worsened by the State's delayed rescue. *Id.* at ¶ 2, 796 A.2d at 675.[6] The Court reasoned the claim did not fall under the § 8104-A(1) exception to immunity because the gravamen of the complaint was that the plaintiff was harmed not by contact with a negligently operated or maintained vehicle, but by the State's failure to execute an efficient rescue. The Court noted that "the kind of negligence falling within the exception to immunity provided in section 8104-A(1) involves *harms that flow naturally or directly from the negligent use of vehicles."* *Thompson v. Dep't of Inland Fisheries & Wildlife,* 2002 ME 78, ¶ 7, 796 A.2d 674, 676-77 (emphasis added). The focus of section 8104-A(1) is on the risk of harm "caused by the vehicle's contact with the general public." *Id.* at ¶ 8, 796 A.2d at 677.

Similarly, in *Brooks v. Augusta Mental Health Inst.,* 606 A.2d 789 (Me. 1992), the Court found that section 8104-A(1) was inapplicable. That case involved a patient who jumped to her death from a moving bus. *Id.* The Law Court found the "gravamen of the plaintiff's claim was not for negligent operation, use, or maintenance of the bus but, rather, for negligent monitoring and supervision of the patient." *Id.* at 790. Accordingly, the Court concluded dismissal of the complaint was proper because the injury suffered was not the natural or direct result of contact with the bus. *Id.*

This case is distinguishable from *Thompson* and *Brooks;* in those cases, the fact that vehicles were involved was ancillary to the nature of the alleged harm. Here, the death of the students flows naturally and directly from the alleged negligent use of the aircraft. The case law does not provide direct guidance as to whether a government employee must be piloting the aircraft in order to constitute governmental use. Moreover, the word "use" is not defined in the statute. *See* 14 M.R.S.A. §§ 8101-8118.

---

[6] Specifically, he claimed the helicopter that was dispatched to rescue him was unable to locate him, because it was equipped with deficient navigational equipment, it was inadequately fueled, and the ground units were not equipped with adequate radio communications equipment. *Id.*

Thus, the court must look further to determine whether the City was "using" the aircraft. Absent statutory definition, the court should use the word's plain and common meaning, construing the word according to its "natural import in common and approved usage." *Goodine v. State*, 468 A.2d 1002, 1004 (Me. 1983).

Black's Law Dictionary defines "use" as "the application or employment of something." BLACK'S LAW DICTIONARY 1540 (7th ed. 1999). It is arguable that the School Department's hiring of an independent contractor to perform orientation flights constituted use, albeit indirect use, of an aircraft within the meaning of the MTCA. The City was using, or employing, the aircraft to conduct orientation flights for the school-based AFJROTC program. The City's use of the aircraft was indirect, as contractors were employed to operate the aircraft, but nevertheless constituted use under the plain meaning of the word.[7]

### 2. Discretionary Function Exception

In the alternative, the City argues that even if the court finds that section 8104-A(1)(D) is applicable, section 8104-B provides them with immunity. The exception to immunity provided by section 8104-A is subject to further exceptions. Section 8104-B provides:

> Notwithstanding section 8104-A, a governmental entity is not liable for any claim which results from:
>
> . . . .
>
> 3. Performing discretionary function. Performing or failing to perform a discretionary function or duty, whether or not the discretion is abused and

---

[7] It is noteworthy that under the City's interpretation of the statute, municipalities would also be immune from liability for harm caused to students in the negligent operation of school buses and other transportation arranged for students by the school because the it contracts with a third party to provide bus transportation. The court is personally aware that the City of Lewiston has used a private carrier to provide school bus transportation for all public school children since at least the early 1950's. When parents send their grade school children off for the day on a school bus, it is hard to conceive that they cannot expect the City to be responsible for the negligence of a school bus driver, even when the bus is privately owned and the driver is not a City employee. The same expectation of safety is applicable here.

whether or not any statute, charter, ordinance, order, resolution or policy under which the discretionary function or duty is performed is valid or invalid. . . .

14 M.R.S. § 8104-B(3). The City Defendants has invoked the discretionary function exception, which, if applicable, would afford the City complete immunity from the plaintiffs' claims. *Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶¶ 16, 17, 948 A.2d 1223, 1229. The Law Court has recognized that "not all decision-making is entitled to discretionary function immunity; only those more significant decisions involving the weighing of competing public policy considerations are entitled to immunity." *Jorgensen v. Dep't of Transp*, 2009 ME 42, ¶ 18, __ A.2d __. The "legislative history supporting the MTCA indicates that the underlying purpose of discretionary function immunity is to shield the government from costly liability for public policy decisions for which there is no insurance." *Id.* at ¶ 20.[8] Discretionary function immunity is a creature of statute; thus, the court must "look first to the plain language and purpose of the entire statutory scheme to determine whether it immunizes the governmental acts at issue in a given case." *Id.* at ¶ 16, 948 A.2d at 1229.

Discretionary function immunity is not intended to protect a government entity from liability for "ministerial acts," which are defined as those acts "to be carried out by employees, by the order of others or of the law, with little personal discretion as to the circumstances in which the act is done." *Id.* at ¶ 21, 948 A.2d at 1231. Thus, "in cases where the questioned conduct has little or no purely governmental content but instead resembles decisions or activities carried on by people generally," discretionary function immunity is not afforded. *Id.* More specifically, "operational decisions, such as those

---

[8] The Legislative Record underlying the MTCA indicates that the Legislature intended that the government "be open to liability [in] certain specific areas, particularly the areas of motor vehicle, equipment, [and] construction" because those were "areas where it appeared likely that an insurance program could be arranged within the reach of the pocketbooks of Maine communities and the State." *Id.* (quoting 2 Legis. Rec. 1644 (1977) (remarks of Sen. Collins)).

regarding the safety or maintenance of premises, fall outside the scope of discretionary function immunity." *Id.* ¶ 22, 948 A.2d at 1231. The Law Court has observed that section 8104-B(3) does not immunize "the everyday non-discretionary operation of governmental motor vehicles, such as routine patrolling." *Norton v. Hall*, 2003 ME 118, ¶ 14, 834 A.2d 928, 932. Conversely, the Court has held that the decision within a correctional facility of when to order a prisoner back to his cell involves discretionary function because it was integral to a basic governmental corrections program. *Roberts v. State*, 1999 ME 89, P10, 731 A.2d 855, 857-58. Similarly, the decisions of a police officer in responding to an emergency are actions entitled to discretionary function immunity because they "serve[] the basic governmental objective of public safety." *Norton*, 2003 ME 118, ¶¶ 7-9, 834 A.2d at 931.

The Law Court has set forth the following four-factor test to evaluate the applicability of discretionary function immunity:

> (1)    Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Tolliver*, ¶ 19, 948 A.2d at 1230 (quotation marks omitted).

In this case, the City focuses on the decision to host an AFJROTC program and offer a federally funded government-funded program and argue that these decisions were governmental in nature and involved policy determinations. According to the City, it is hard to fathom a program, policy, or objective that is more inherently governmental. They further contend that the acts, omissions, or decisions made by

Colonel Meyer utilized training, experience, expertise, and judgment to accomplish the goals of the program, and were therefore discretionary in nature.

The plaintiffs argue that as the SASI of the Lewiston High School AFJROTC and an experienced Air Force pilot and safety officer, Colonel Meyer had a clear, non-discretionary obligation to halt the cadet orientation flights once he had notice that Weir did not operate the aircraft in an appropriate manner. According to the plaintiffs, Colonel Meyer's duties and obligations with respect to cadet orientation programs were clear-cut, not open to policy deliberation, and not uniquely "governmental" in nature. They point out that this case involves a school employee arranging vehicle transportation for children and argue that there is no governmental function that will be compromised if those who schedule motorized transportation for children are held liable for their negligent actions.

Evidence that supports the plaintiffs' claims, and which is to be construed in the light most favorable to them as the non-moving party, is that Colonel Meyer had notice that Weir presented a risk to the students, and this risk should have been clear to any reasonable and prudent administrator. Colonel Meyer had full oversight of the orientation flights and was responsible for the safety of the children. Upon learning of the risky behavior of the pilot (Weir), he had the responsibility to address the issue.

Colonel Meyer's acts or omissions were not of a governmental nature or function; rather, they were made within the scope of his business as a school instructor. Although the AFJROTC is a governmental program involving policy determinations in its implementation, the acts as alleged against the City involve Colonel Meyer's choice whether, and to what extent, to review what the pilot was doing during a particular flight. This did not involve formulation of a basic governmental policy. *See Tolliver*, at ¶ 22, 948 A.2d at 1231. Rather it involved operational decisions made by a school

employee regarding the safety of the children participating in that particular AFJROTC program on the day of the accident.

## IV. DECISION AND ORDER

The clerk will make the following entries as the Decision and Order of the court:

    **A.** The Motion for summary judgment by the defendants City of Lewiston and the Lewiston School Department against the claims of all plaintiffs is denied.

    **B.** All claims against the Lewiston School Department by all plaintiffs are merged into claims against the City of Lewiston. The City may assert any defenses that may have been otherwise available to the school department.

    SO ORDERED.

Dated: July 22, 2009

Thomas E. Delahanty II
Justice, Superior Court