**STATE of Maine**

v.

**Justin H. LONG.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 26, 1995.

Decided April 27, 1995.

Geoffrey Rushlau, Dist. Atty., Rockland, for State.

David Beneman, Levenson, Vickerson & Beneman, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Justin Long appeals from convictions of arson, 17–A M.R.S.A. § 802 (1983 & Supp. 1994), and conspiracy to commit arson, 17–A M.R.S.A. §§ 151, 802 (1983 & Supp.1994), following a jury trial in the Superior Court (Knox County, *Marsano, J.*). Long contends that the court improperly excluded certain exculpatory testimonial evidence. Our review of the record reveals no error or abuse of discretion in the court's evidentiary rulings. Accordingly, we affirm the judgments.

At some point prior to September 18, 1992, David LaFlamme was subpoenaed to testify before a grand jury considering charges against Brett Bodman. LaFlamme refused to testify and informed Bodman's mother that the state might be looking for Bodman. Between September 18 and September 24, 1992, the trailer owned by LaFlamme was painted with "nar[c]," "rat," vulgarities, and sexual obscenities about LaFlamme's girlfriend. On September 24, the trailer was burned down.[1]

Long and David Oakes[2] were charged with setting the fire based on statements they made during conversations they had with law enforcement officers. Long and Oakes talked about setting someone up to take the blame for the fire and that they would not be personally involved in setting the fire because they had engaged someone else to do it. After the fire, both men referred to a fire that had occurred and mentioned the name "Frank" in conjunction with it.[3]

On September 25, Frank Achorn, an acquaintance of Long and Oakes, was arrested on charges unrelated to this case. Achorn had singed hair, eyebrows, and wrists, and pink blotches on both hands. Achorn testified that he did not set the fire and that neither Long nor Oakes asked him to set the fire.[4]

At some point after the fire, LaFlamme spoke with Bodman, who allegedly admitted that he was responsible for setting the fire. At trial, LaFlamme testified as follows:

Q: While you were incarcerated, did you have an opportunity to talk with Mr. Bodman?

A: Yes.

Q: And when was that, if you recall?

A: I don't remember the date exactly, but it was after—it was after the fire, and—

The State objected and argued that Bodman's statement was hearsay and that it could come in as a statement against interest only if corroborating circumstances existed. Long argued that the corroborative evidence was that Bodman had a motive to act against LaFlamme, Bodman voluntarily made the statement, and there was no collusion between the two. Long also argued that the statement was exculpatory because Bodman admitted responsibility for the crime with which Long was charged. The court ruled the evidence inadmissible. After the ruling, the direct examination of LaFlamme was resumed:

Q: Do you know who is responsible for the fire at your trailer?

State: Objection, Your Honor.

1. During the latter half of 1992, LaFlamme was incarcerated on cocaine trafficking charges.

2. The State joined Long's codefendant, Oakes, for the trial. Oakes was also convicted of arson and conspiracy to commit arson.

3. One of the officers, Patrol Sergeant Reginald Walker, testified as follows:
   [W]hen it was first mentioned about the fire, I asked who had done it and Justin said I didn't need to know, and we got talking about just everything, and David said Frank said we should have seen the fire and then he just kind of stopped, like whoops, because he had said the name, oh, shit I think is exactly what he

said, because he had said the name. And I told him that, you know, we're dealing like we are, it doesn't matter if they tell me Frank Achorn set the fire, and then they just went on to talk about the fire, saying that Frank had told them that he had poured gasoline and broke a window out, poured gasoline in and threw a match in it and kind of—not really exploded, but the flames shot out and it burned him on the front of the hair and on the arms.

4. Achorn was also charged with arson and was awaiting trial at the time of Long's trial. He has since been acquitted.

Court: Basis.

State: To foundation, for this person being able to say from personal knowledge that he knows who did the fire.

Court: The objection is sustained.

Q: I have no other questions.

The jury returned verdicts of guilty against Long.

■ On appeal, Long contends that the court erred in excluding LaFlamme's testimony about who set the fire. We review the trial court's evidentiary rulings for clear error or an abuse of discretion. *State v. Shuman*, 622 A.2d 716, 718 (Me.1993). "The question is not whether this Court would have made the same ruling, but whether the record supports the Superior Court's decision." *State v. Barden*, 432 A.2d 404, 410 (Me.), *cert. denied*, 454 U.S. 1088, 102 S.Ct. 648, 70 L.Ed.2d 624 (1981).

■ Long first contends that the court improperly precluded LaFlamme from testifying that he knew who set fire to his trailer because an adequate foundation for LaFlamme's personal knowledge was established. A witness may testify only to those matters about which he has personal knowledge. M.R.Evid. 602.[5] Personal knowledge refers to that which the witness "has perceived through the physical senses." P. Murray, *Maine Evidence* § 602.1 at 6–9 (3d ed. 1992). A straightforward application of the rule shows, contrary to Long's contention, that LaFlamme did not perceive through his physical senses that Bodman set the fire.

LaFlamme's "knowledge" of who burned down his trailer was based solely on what he was told by Bodman.

■ Although a witness may testify from personal knowledge that a statement was made, testimony about the content of such a statement raises hearsay problems. "[I]f a witness personally hears another make a statement, he is qualified to testify under Rule 602 that such statement was made. He may not, however, testify as to the contents of the out-of-court statement if such statement is offered to prove the truth of the matter asserted[6] and falls within no exception to the hearsay rule." *State v. Duquette*, 475 A.2d 1145, 1147 n. 1 (Me.1984); *see also* 10 J. Moore, *Moore's Federal Practice* § 602.03 at VI–34 to –35 (1994). Long contends that Bodman's statements to LaFlamme were admissible pursuant to M.R.Evid. 804(b)(3)[7] as a statement against interest. In order for a hearsay statement to be admitted pursuant to rule 804(b)(3), it must meet three requirements:

(1) the declarant must be unavailable as a witness;

(2) the statement must so far tend to subject the declarant to criminal liability that a reasonable person in [his] position would not have made the statement unless [he] believed it to be true; and (3) the statement must be corroborated by circumstances that "clearly" indicate its trustworthiness.

*State v. Smith*, 415 A.2d 553, 559 (Me.1980) (*cited in State v. Priest*, 617 A.2d 537, 538–39

---

5. M.R.Evid. 602 provides in part:
   A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.

6. LaFlamme's statement would have been admissible to impeach the testimony of Bodman. *State v. Benner*, 654 A.2d 435, 437 n. 3 (Me.1995).

7. M.R.Evid. 804(b)(3) provides in pertinent part:
   The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

   . . . .

   (3) *Statement Against Interest*. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
   The definition of "unavailability" is provided in M.R.Evid. 804(a).

(Me.1992)). Long concedes that Bodman was available as a witness. Thus, this hearsay exception was not available for the proffered evidence.[8]

The entry is:

Judgments affirmed.

All concurring.

---

**8.** Because it is clear that the testimony is not admissible as a result of Bodman's availability, we need not address the other 804(b)(3) criteria.