STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
CIVIL DIVISION
DOCKET NO. CV-14-164

TERRY AND KELLY VARNEY,
individually and as parents and next friend of
R.V.,
     Plaintiffs,

v.

DENISE RICHARDS, individually and in
her official capacity as Educational
Technician employed by Regional School
Unit # 67,

DENISE HAMLIN, individually as the
former Superintendent of Regional School
Unit #67,

and

KEITH LASER, in his official capacity as
successor to DENISE HAMLIN as the
Superintendent of Regional School Unit #
67,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT AND DEFENDANT
HAMLIN'S MOTION FOR
JUDGMENT ON THE PLEADINGS

Before the Court is Defendants Denise Richards, Denise Hamlin, and Keith Laser's motion for summary judgment and Defendant Denise Hamlin's motion for judgment on the pleadings in a case alleging violations of the Maine Civil Rights Act, 5 M.R.S. § 4681 *et. seq.*, intentional infliction of emotional distress, negligent infliction of emotional distress, and assault and battery, filed on October 21, 2015. This case was originally filed in the District of Maine, where two counts were dismissed and the remaining counts were remanded to this Court. After consideration and for the reasons stated below, Defendants' motion for summary judgment is

I

**GRANTED** as to counts II, IV, V, VI, and VIII. Defendant Hamlin's motion for judgment on the pleadings is **GRANTED** as to counts VII and IX, and **MOOT** as to counts II and IV.

## BACKGROUND

The following facts, viewed in the light most favorable to Plaintiffs as the non-moving party, are undisputed and established in the summary judgment record.[1] In evaluating counts VII and IX of the motion for judgment on the pleadings, only the facts alleged in Plaintiffs' complaint will be considered. However, the facts described in this section provide a basis for the events that form the basis of this opinion.

Plaintiffs Terry and Kelly Varney are the parents of R.V. (Compl. ¶ 1.) Denise Richards is an Education Technician that rides RSU # 67 school bus # 9. (Defs.' S.M.F. ¶¶ 4-5.) On October 29, 2012, R.V., a seven-year-old elementary school student weighing 45 pounds, was riding with another student in the front seat of school bus # 9. (*Id.* ¶¶ 5-6; Pls.' Opp. S.M.F. ¶¶ 6, 20.) Ms. Richards was riding in a seat two rows behind R.V., and there was an empty seat across the aisle from her. (Defs.' S.M.F. ¶ 7.)

---

[1] As a preliminary matter, Defendants argue that the Varney affidavit cannot be used to support many of Plaintiffs' statements of additional material facts or Plaintiffs' denials of Defendants' statement of material facts because the affidavit was not based on personal knowledge. *See* M.R. Civ. P. 56(e) ("[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). Ms. Varney was not on the bus on October 29, 2012, and thus has no firsthand knowledge of the events that occurred on the bus. *See* M.R. Evid. 602; M.R. Evid. 701; *State v. Long*, 656 A.2d 1228, 1230 (Me. 1995) ("[p]ersonal knowledge refers to that which the witness has perceived through the physical senses"); *c.f. State v. Robinson*, 2015 ME 77, 118 A.3d 242 (holding that a witness's *identification* of people in a video was admissible lay opinion).

Therefore, all statements by Ms. Varney referring to what occurred on the bus are inadmissible as evidence in Defendants' motion for summary judgment because Ms. Varney did not have personal knowledge of the events. The Court will disregard any statement of material fact supported by inadmissible evidence in the Varney affidavit. Specifically, the Court disregards paragraphs 21-31 of Plaintiffs' statement of additional material facts, and deems paragraphs 6 and 8-17 of Defendant's statement of facts admitted.

While the bus was moving, there was an altercation in R.V.'s seat between her and her seatmate. (*Id.* ¶¶ 8-10.) Plaintiffs allege that the cause of this altercation was bullying by R.V.'s two seatmates, resulting in R.V. telling the boys to leave her alone; Defendants allege that R.V. yelled at and hit her seatmate in the face. (*Id.* ¶¶ 8-9; Pls.' Opp. S.M.F. ¶¶ 21-25.) After the altercation, Ms. Richards directed R.V. to move to the empty seat two rows back. (Defs.' S.M.F. ¶ 10.) R.V. did not follow Ms. Richard's instructions. (*Id.* ¶ 11.) Ms. Richards stood up, walked forward to R.V.'s seat, picked her up and moved her two rows back to the empty seat. (*Id.* ¶ 12.) Ms. Richards then sat down in the seat next to R.V. (*Id.* ¶ 14.) Plaintiffs allege that while picking up R.V., Ms. Richards "grabbed her by the ribcage/abdomen area and forcibly moved R.V. . . . then sat next to her pinning R.V.'s arms to her sides while wrapping R.V. up in an unwelcome embrace. (Pls.' Opp. S.M.F. ¶ 29.)

The bus was equipped with a security camera that recorded the incident. (Defs.' S.M.F. ¶ 18; Ex. B.) The day after the incident, Terry and Kelly Varney spent over an hour reviewing the surveillance tape of the bus ride. (Pls.' Opp. S.M.F. ¶ 34.) Plaintiffs allege that Kelly Varney asked Superintendent Hamlin for a copy of the video because R.V.'s counselor was going to use the video in treatment of R.V.'s posttraumatic stress. (*Id.* ¶¶ 35-36.) Superintendent Hamlin told Kelly Varney "You'll never see that tape, I'll bury it first." (*Id.* ¶ 37.) When asked what she meant by that statement, Ms. Hamlin responded, "Not only will you never have a copy of that tape; you'll never see it again." (*Id.*)

RSU # 67's insurance policy specifically excludes coverage for any claim "for which there would be immunity under the Maine Tort Claims Act in the absence of coverage." (Defs.' S.M.F. ¶ 19; Ex. A 2.)

3

MOTION FOR SUMMARY JUDGMENT

Under M.R. Civ. P. 56, summary judgment is appropriate when review of the parties' statements of material facts and record evidence to which the statements refer, considered in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact that is in dispute and the moving party is entitled to judgment as a matter of law. *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733. A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between two competing versions of the facts. *Stewart-Dore v. Webster Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773. The evidence offered to establish a dispute as to material fact, submitted in opposition to a motion for summary judgment, "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 19, 60 A.3d 759.

When acting on a motion for summary judgment, a court may not make inferences based on credibility or weight of the evidence. *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 16, 917 A.2d 123 (citing *Emerson v. Sweet*, 432 A.2d 784, 785 (Me. 1981)). A party who moves for summary judgment is entitled to a judgment only if the party opposing the motion, in response, fails to establish a prima facie case for each element of his cause of action. *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 12, 48 A.3d 774.

Plaintiffs allege violations of the Maine Civil Rights Act (MCRA), intentional and negligent infliction of emotional distress, and assault and battery.

1.     Counts II and IV: Violation of the MCRA

The MCRA "was designed to prevent intentional interference with the exercise of rights secured by the laws and constitutions of either the United States or Maine by threats,

4

intimidation, or coercion." *Phelps v. President & Trs. of Colby Coll.*, 595 A.2d 403, 404 (Me. 1991).

> Whenever any person, whether or not acting under color of law, intentionally interferes or attempts to intentionally interfere by physical force or violence against a person, damage or destruction of property or trespass on property or by the threat of physical force or violence against a person, damage or destruction of property or trespass on property with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State or violates section 4684-B, the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's own behalf a civil action for legal or equitable relief.

5 M.R.S. § 4682(1-A) (2016). "[T]he Act provides a means of enforcing existing rights against private parties, but does not expand substantive rights." *Phelps*, 595 A.2d at 403.

"Claims brought under the Maine Civil Rights Act ("MCRA"), 5 M.R.S.A. § 4681 *et. seq.*, are interpreted in the same manner as claims brought under 42 U.S.C. § 1983, as the state statute is modeled upon the federal." *K v. City of S. Portland*, 407 F. Supp. 2d 290, 298 (M. De. 2006); *see also Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994); *Doe v. Williams*, 2013 ME 24, ¶ 72, 61 A.3d 718 (stating that MCRA is patterned after § 1983 and affords a private cause of action for violations of constitutional rights by any person); *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 16, 125 A.3d 1141 (finding that "a violation of the Maine Constitution . . . is interpreted coextensively with his federal civil rights claim brought pursuant to section 1983"). The parties' claims must be addressed "with the understanding that the rights guaranteed by the United States Constitution and the Maine Constitution are coextensive." *Bagley v Raymond Sch. Dep't*, 1999 ME 60, ¶ 13, 728 A.2d 127.

Plaintiffs argue violations of both procedural and substantive due process, which are rights secured by the Fourteenth Amendment.

5

A. Substantive Due Process

Maine has adopted the "shocks the conscience" standard for evaluating substantive due process claims. *Norton v. Hall*, 2003 ME 118, ¶ 18, 834 A.2d 928. Conduct that shocks the conscience is "so brutal and offensive that it d[oes] not comport with traditional ideas of fair play and decency." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (citing *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)) (quotation marks omitted). The District Court dismissed the Varneys' parallel § 1983 claims under this same standard. *Varney v. Richards*, No. 1:15-CV-011-NT, 2015 U.S. Dist. LEXIS 57179 (D. Me. Apr. 30, 2015).

The Law Court has not directly addressed the issue of whether moving a student from one seat to another on a bus violates the student's due process rights. Defendants point to several cases where the "shocks the conscience" standard required the plaintiffs to meet a very high bar, noting that "conscience shocking behavior in the education context has usually involved physical or sexual abuse or excessive punishment." *Gomes v. Univ. of Me. Sys.*, 304 F. Supp. 2d 117, 124 (D. Me. 2004). However, Plaintiffs counter with several contradicting cases suggesting that physical restraint in an educational setting may be considered conscious shocking behavior.

The issue here is whether as a matter of law, moving a student from one seat to another on a bus and then sitting next to her, detaining her in the seat, violates the student's substantive due process rights.[2] This conduct is simply not conscience shocking— it is not "so brutal and

---

[2] The parties do not dispute that Ms. Richards picked R.V. up and moved her to a new seat two rows back, then sat next to her. The Varneys described this conduct in the following manner: "Ms. Richards walked up to R.V., grabbed her by the ribcage/abdomen and brought her to a back seat where she forced her into the seat and sat next to her restraining her movement." (Pls.' Opp. S.M.F. ¶ 12.) According to the Varneys, Ms. Richards then sat next to R.V. "restraining her in an unwelcome embrace." (*Id.* ¶ 14.) However, as discussed in the preceding footnote, the Varney affidavit that Plaintiffs cite to is inadmissible as it pertains to the events on the bus, so this colorful description of conduct is not relevant to this discussion.

6

offensive" as to offend notions of "fair play and decency." *Lewis*, 523 U.S. at 847. Picking up and moving a child to a different seat in response to a physical altercation may be offensive to the child's parents, but is not brutal or offensive to "fair play and decency." *Id*. As the District Court stated, "while Plaintiffs arguably allege that Defendant Richards engaged in inappropriate conduct, Plaintiffs' complaint does not include factual allegations that fairly can be characterized as egregious, outrageous, or conscience-shocking." *Varney*, 2015 U.S. Dist. LEXIS 57179 at *9 (noting that "[t]he Supreme Court's affirmance of the dismissal of the case in *Ingraham*, which included a substantive due process theory, suggests that not even 'excessive paddling' would shock the conscience for purposes of federal law" (citing *Ingraham v. Wright*, 430 U.S. 651, 689 n.5.)).

Therefore, Defendants' motion for summary judgment is granted as to this count because there is no genuine issue of material fact that is in dispute.

### B. Procedural Due Process: Failure to Supervise and Train

The Varneys' procedural due process claims are based on Superintendent Hamlin's alleged lack of supervision and training of Defendant Richards. Plaintiffs argue that this lack of supervision and training created a violation of R.V.'s constitutional rights.

At the time of the incident, Plaintiffs allege that the school had a policy regarding the use of physical force to restrain a child. However, there is no reference to this policy in Plaintiffs'

As noted above, the Court disregards paragraphs 21-31 of Plaintiffs' statement of additional material facts, and deems paragraphs 6 and 8-17 of Defendant's statement of facts admitted because Plaintiffs' denials were supported by the Varney affidavit, which is inadmissible as to the events on the bus. The Court is left with Defendant's description of the events, as follows:

While the bus was moving, there was an altercation in R.V.'s seat between her and her seatmate where R.V. yelled at and hit her seatmate in the face. (Def.'s S.M.F. ¶¶ 8-10.) After the altercation, Ms. Richards directed R.V. to move to the empty seat two rows back. (*Id*. ¶ 10.) R.V. did not follow Ms. Richard's instructions. (*Id*. ¶ 11.) Ms. Richards stood up, walked forward to R.V.'s seat, picked her up and moved her two rows back to the empty seat. (*Id*. ¶ 12.) Ms. Richards then sat down in the seat next to R.V. (*Id*. ¶ 14.)

7

statement of material facts or in Plaintiffs' opposition to Defendants' statement of material facts. Since the policy itself and Ms. Hamlin's alleged violation of the policy are not supported by Plaintiffs' statement of material facts, this count fails because there is because there is no genuine issue of material fact that is in dispute.

Even if the allegations of a violation of procedural due process were supported by Plaintiffs' statement of material facts, Plaintiffs' argument fails. Under § 1983, a defendant will be liable if the plaintiff can show a direct causal link between a policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "Liability can stem from an actual policy, a custom, or a municipality's failure to train its employees." *K v. City of S. Portland*, 407 F. Supp. 2d at 298.

For liability to stem from a custom, the custom must be attributable to the municipality and must be "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" *Id.* at 296 (quoting *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989)). Plaintiffs have not alleged a single instance where this policy was ignored, other than the event that led to this lawsuit. Even taking the facts laid out in the complaint in the light most favorable to Varneys as the non-moving party, Plaintiffs have not alleged anything that could be reasonably construed as suggesting a "well settled and widespread" custom that could give rise to liability. *K v. City of S. Portland*, 407 F. Supp. 2d at 296.

For liability to stem from a failure to train, the plaintiff must show "an actual policy of inadequate training, where the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Id.* at

8

297 (quotation marks omitted). Further, the plaintiff must show that the municipality deliberately chose an inadequate training program. *Id.* Here, the complaint merely alleges "Denise Hamlin was responsible for training and ensuring all Employees' compliance with RSU #67 policies;" that she "failed to meet her duties by failing to properly train and supervise RSU #67 employees in the policies and procedures concerning the use of physical restraints;" and that her "disregard of the school's policies and procedures created an environment where employee's failure to comply with policy was endorsed by the administration." (Compl. ¶ 37.) Nowhere in the complaint are any allegations that the school deliberately chose an inadequate training program or that there was an "actual policy of inadequate training." *K v. City of S. Portland*, 407 F. Supp. 2d at 297.[1]

Therefore, Defendants' motion for summary judgment is granted as to this counts II and IV because there is no genuine issue of material fact that is in dispute.

II.     Plaintiffs' Tort Claims against Ms. Richards Personally: Counts V, VI, and VIII

"Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for . . . [p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid." 14 M.R.S. § 8111(1) (2016).

---

[1] The Varneys cite to *Sandin v. Conner* for the implication that once a school creates a regulation providing due process safeguards, it creates a liberty interest. 515 U.S. 472 (1995). In *Sandin*, the Court found that "[i]n the context of inmates' rights, these state-created liberty interests are limited to 'freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Jackson v. Ponte*, No. AP-12-47, 2013 Me. Super. LEXIS 200, *7 (Sep. 25, 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). *Sandin* created a standard for freedom from restraint in a prison context, and so far Maine has not applied this same standard in a school setting.

The Law Court has used the following four-factor test to determine whether discretionary function immunity applies:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective?
> (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective?
> (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?
> (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Norton v. Hall*, 2003 ME 118, ¶ 6, 834 A.2d 928. Discretionary function immunity is not available for ministerial acts, which are "those carried out by employees . . . with little personal discretion as to the circumstances in which the act is done." *Tolliver v. DOT*, 2008 ME 83, ¶ 21, 948 A.2d 1223 (quotation marks omitted). The Superior Court has held that teachers' actions while supervising students at school is protected under discretionary function immunity, but the Law Court has not yet addressed the issue. *Fraser v. Superintending Sch. Comm. of Old Town*, No. CV-14-200, 2015 Me. Super. LEXIS 207, *11-12 (July 19, 2015).[4]

Here, Ms. Richard's actions in moving R.V. involved "the exercise of basic policy evaluation, judgment, and expertise." *Id.* at *12 (quotation marks omitted). Ms. Richards was

---

[4] "In 2002, the Superior Court granted summary judgment, holding that wrestling drills conducted within the school did not constitute the operation of a public building and that the coach was entitled to discretionary function immunity when one of his players was hurt during practice inside the school. On appeal, the Law Court decided the case on the public building exception, and did not address the discretionary function question." *Fraser*, 2015 Me. Super. LEXIS 207 at *11 (citing *Lightfoot v. M.S.A.D.# 35*, 2002 WL 1973919 (Me. Super. Ct., June 18, 2012), *aff'd sub nom, Lightfoot et al. v. School Admin. Dist No. 35*, 2003 ME 24, 816 A.2d 63.).

"In 2002, the Superior Court also granted summary judgment, holding that teachers were entitled to discretionary function immunity when one the students they were chaperoning injured herself in a fall on a playground. On appeal, the Law Court decided the case based on the public building exception, and did not reach the discretionary function question." *Fraser*, 2015 Me. Super. LEXIS 207 at *11-12 (citing *Fiandaca ex rel. Peterson v. City of Bangor*, 2002 WL 1335843 (Me. Super. June 5, 2002), *aff'd sub nom, Peterson v. City of Bangor*, 2003 ME 24, ¶ 9, 831 A.2d 416.).

charged with supervising students on the bus ride, which involved making decisions regarding activities that were appropriate for the students while riding the bus and ensuring that the best interests of the children were taken into account. *Id.* at *11-12. She was performing a discretionary function while making these decisions, so she would be protected by discretionary function immunity for all the tort claims against her, including those found in counts V, VI, and VIII.

III.     Tort Claims against Defendants in their Official Capacities: Counts V, VI, and VIII

Under 14 M.R.S. 8103(1) (2016), "all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." An exception applies if the governmental entity has procured insurance against liability that provides coverage in areas where the governmental entity is immune. 14 M.R.S. 8116 (2007). In that case, "the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage." *Id.* Here, the school's policy specifically excludes coverage for any claims subject to immunity under the MCRA. (Defs.' S.M.F. ¶ 19; Ex. B 2.) Accordingly, the Defendants in their official capacities are entitled to immunity on all Plaintiffs' tort claims, and thus summary judgment is proper.

There is no genuine dispute of material fact as to counts II, IV, V, VI, and VIII, and Defendants' are entitled to judgment as a matter of law. Therefore, the Defendants' motion for summary judgment as to counts II, IV, V, VI, and VIII is hereby **GRANTED**. Since the motion for summary judgment has been granted as to counts II and IV, Defendant Hamlin's motion for judgment on the pleadings is hereby **MOOT** with respect to those two counts.

11

MOTION FOR JUDGMENT ON THE PLEADINGS

A party may move for judgment on the pleadings pursuant to M.R. Civ. P. 12(c) "[a]fter the pleadings are closed but within such time as not to delay the trial." A motion for judgment on the pleadings is the equivalent of a motion to dismiss for failure to state a claim under M.R. Civ. P. 12(b)(6). *MacKerron v. MacKerron*, 571 A.2d 810, 813 (Me. 1990); *see also Tornesello v. Tisdale*, 2008 ME 84, 948 A.2d 1244 (analyzing a motion for judgment on the pleadings using motion to dismiss language).

When a defendant files a motion for judgment on the pleadings, only the legal sufficiency of the complaint is tested. *Cunningham v. Haza*, 538 A.2d 265, 267 (Me. 1988). Any affirmative defenses proffered by the defendant are ignored. *Id.* Dismissal of a complaint is proper only when the complaint fails to state a claim for which relief may be granted. *See* M.R. Civ. P 12(b)(6). At this stage of the proceedings, the issue is whether the plaintiff is entitled to offer evidence to support their claims, not whether they will ultimately prevail. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005). A complaint shall not be dismissed unless it "appears to a certainty that under no facts that could be proved in support of the claim is the plaintiff entitled to relief." *Monopoly, Inc. v. Aldrich*, 638 A.2d 506, 510 (Me. 1996) (quotation marks omitted).

I.    Count VII: Intentional Infliction of Emotional Distress

In *Henriksen v. Cameron*, the Law Court held that a plaintiff asserting intentional infliction of emotional distress (IIED) is required to show:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain that such distress would result from his conduct;
(2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;"
(3) the actions of the defendant caused the plaintiff's emotional distress; and

12

> (4) the emotional distress suffered by the plaintiff was so "severe" that "no reasonable man could be expected to endure it."

622 A.2d 1135, 1138-39 (Me. 1993) (quoting *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148 (Me. 1979) (citing Restatement (Second) of Torts § 46)); *see also Berry v. Worldwide Language Res., Inc.*, 716 F. Supp. 2d 34, 54 (D. Me. 2010) (applying Maine law).

The standard for successfully pursuing an IIED claim is high—generally, a case is one in which the recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous!" Restatement (Second) of Torts § 46 (1965). Mere threats are not sufficiently "extreme and outrageous" to support a claim for IIED. *Id.* at cmt. d ("liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"); *Berry*, 716 F. Supp. 2d at 54 (finding no evidence of extreme and outrageous conduct under Maine law where there was "no evidence that such threats were capable of being carried out or that [Plaintiffs] intended to carry out such threats").

Additionally, the Restatement provides the following comment that is pertinent to this matter:

> The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. . . . In particular police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position. Even in such cases, however, the actor has not been held liable for mere insults, indignities, or annoyances that are not extreme or outrageous.

Restatement (Second) Torts § 46 cmt. e. The illustration dealing with school authorities as mentioned in the comment above addresses conduct by a principal to a student, not by school authority to parents:

> A, the principal of a high school, summons B, a schoolgirl, to his office, and abruptly accuses her of immoral conduct with various men. A bullies B for an hour, and threatens her with prison and with public disgrace for herself and her

13

parents unless she confesses. B suffers severe emotional distress, and resulting illness. A is subject to liability to B for both.

*Id.* at cmt. c, illus. 6.

Here, the Varneys claim that Ms. Hamlin's "refusal to provide the video feed so that R.V.'s therapist could view it and design an appropriate therapeutic regime" is extreme and outrageous conduct sufficient to support an IIED claim. (Pls.' Opp'n 4.) However, as Ms. Hamlin points out, the complaint does not actually include such facts. The complaint alleges "Denise Hamlin engaged in intentional or reckless conduct when she threatened to destroy or hide evidence of harm to Terry and Kelly Varney's seven year old daughter which conduct inflicted, or was substantially certain to result in, severe emotional distress to Terry and Kelly Varney." (Compl. ¶ 59.)

If the conduct were directed at R.V., the claim for IIED may have enough merit to survive a motion to dismiss because Ms. Hamlin would have some enhanced level of authority over her student, which could warrant lowering the "extreme and outrageous" standard. *See* Restatement (Second) of Torts § 46 cmt. e. However, directed at a parent, who the school official does not have the same level of authority over, the IIED claim is evaluated by the high "extreme and outrageous" standard. Here, the alleged conduct of Ms. Hamlin simply does not rise to the level of extreme and outrageous conduct such that a reasonable person could not be expected to endure it. As the federal court in *Berry* noted—while applying Maine law—mere threats are not sufficiently "extreme and outrageous" to support a claim for IIED. 716 F. Supp. 2d at 54.

Therefore, "it appears to a certainty that under no facts that could be proved" in support of the IIED claim are Plaintiffs entitled to relief. *Monopoly*, 638 A.2d at 510.

II.     Count IX: Negligent Infliction of Emotional Distress

To survive a defendant's motion to dismiss on a negligent infliction of emotional distress (NIED) claim, the plaintiff must have alleged sufficient facts that could establish that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached the duty; (3) the plaintiff suffered severe emotional distress; and (4) the defendant's conduct caused the harm. *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 23, 133 A.3d 1021. A plaintiff claiming NIED faces "a significant hurdle in establishing the requisite duty, in great part because the determination of duty in these circumstances is not generated by traditional concepts of foreseeability." *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18. "Although each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others." *Id.*

The Varneys do not allege that Ms. Hamlin owed a duty to the Varneys other than "Denise Hamlin had a duty not to inflict emotional distress upon Terry and Kelly Varney." (Compl. ¶ 70.) As stated above, there is no duty to avoid negligently causing emotional harm to others. *See Curtis*, 2011 ME 158, ¶ 18, 784 A.2d 18. Accordingly, because Ms. Hamlin did not owe a duty to the Varneys, the Varneys have not stated a claim for relief that is plausible on its face.

Plaintiffs have failed to state a *prima facie* case for counts VII and IX, alleging intentional infliction of emotional distress and negligent infliction of emotional distress. Therefore, Defendant Denise Hamlin's motion for judgment on the pleadings is **GRANTED** with respect to counts VII and IX. As mentioned before, the motion for judgment on the pleadings is dismissed as moot for counts II and IV because those counts were dealt with in the motion for summary judgment.

15

The entry is:

1. Defendants' Motion for Summary Judgment on Counts II, IV, V, VI, and VIII is **GRANTED**.
2. Defendant Denise Hamlin's Motion for Judgment on the Pleadings is **GRANTED** on Counts VII and IX.
3. Defendant Denise Hamlin's Motion for Judgment on the Pleadings is **MOOT** as to Counts II and IV.
4. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: _7/21/16_

William R. Anderson
Justice, Maine Superior Court

16